UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2184(DSD/JMM)

Cherise C. LaChapelle, Ahmad C. LaChapelle and Jamal R. LaChapelle,

Plaintiffs,

v.

**ORDER**

Mall of America Company; Mall of America Associates; JV Minnesota One; MOAC Limited Partnership; Triple Five of Minnesota, Inc.; SI-Minn Developers, Limited Partnership; SI-Minn, Inc., Simon DeBartolo Group d/b/a Simon Mall of America Management; Unnamed Mall of America Corporation X; Mall of America Security and Cullan C. McHarg, Christopher Froula, Evan Smith, Steve Jaworski, Officer Clemons, Officer Okerberg, and Officer Plante, and several John Does, acting as Mall of America security personnel; Venator Group Retail, Inc., a New York corporation, dba Champs Sports; and Manager John Roe and several John Roes of Champs Sports,

Defendants.

Stephen W. Cooper, Esq. and Stacey R. Everson, Esq., Cooper Law Office, 800 Ceresota Building, 155 Fifth Avenue, Minneapolis, MN 55401, counsel for plaintiffs.

John P. Brendel, Esq. and Burke J. Ellingson, Esq., Brendel & Zinn, 46 East Fourth Street, Suite 804, St. Paul, MN 55101, counsel for defendants Mall of America Company, Mall of America Associates, JV Minnesota One, MOAC Limited Partnership, Triple Five of Minnesota Inc., Si Minn Developers Ltd., Si-Minn Inc., Simon DeBartolo Group, Unnamed Mall of America Corporation X, Mall of

FILED 1-7-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

America Security, Cullan C. McHarg, Christopher Froula, Evan Smith, Steve Jaworski, Officer Clemons, Officer Okerberg, Officer Plante.

Bradley M. Jones, Esq., Kenneth W. Dodge, Esq., and Susan K. Fitzke, Esq., Meagher & Geer, 4200 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN 55402; Kerry L. Middleton, Esq., Fafinski Mark & Johnson, 6600 City West Parkway, Suite 300, Eden Prairie, MN 55344, counsel for defendant Venator Group Retail, Inc.

This matter is before the court on the summary judgment motion of defendant Venator Group Retail, Inc. Based on a review of the file, record, and proceedings herein, the court grants defendant's motion.

**BACKGROUND**

On September 5, 1998, two of the three plaintiffs in this case went to the Champs Sports store ("Champs") in the Mall of America (the "mall") to return a pair of tennis shoes.[1] Champs is owned by defendant Venator Group Retail, Inc. ("Venator"). Champs's employees examined the shoes and refused to accept them for return because they believed them to be worn and damaged. (See Rubenzer Aff. ¶ 3; Bloomer Dep. at 16, 17 and 25.) It also appeared to the employees that the damage to the shoes was intentional. (Id.) The

[1] The two plaintiffs were Ahmad C. LaChapelle and Jamal R. LaChapelle. Ahmad had purchased the shoes several days earlier, and Jamal browsed in the store while Ahmad attempted the return.

store manager informed plaintiff that Champs would not accept for return the shoes because they appeared to be intentionally damaged merchandise. (Rubenzer Aff. ¶ 3; Bloomer Dep. at 27-28.) When the store manager perceived that the plaintiff was becoming angry, mall security was called and the plaintiffs were escorted from the store.[2] (Id.)

After Champs's employees called security and the plaintiffs had left defendant's store, events transpired whereby plaintiffs were eventually asked by security to leave the mall. Subsequently, two of the plaintiffs were arrested by the mall security.[3]

Plaintiffs have filed suit against defendant Venator alleging:[4] Negligence, negligent premises liability, negligent hiring, negligent supervision, negligent retention, intentional infliction of emotional distress, violation of 42 U.S.C. § 1983,

---

[2] Additionally, plaintiff Ahmad LaChapelle admits that he accused the store manager of acting racist in refusing to accept for return the damaged shoes. (A. LaChapelle Dep. at 79.) The store manager also testified that during this exchange, he became frightened of plaintiff. (Rubenzer Dep. at 48.)

[3] The issues surrounding the subsequent altercation between plaintiffs and mall security that eventually led to the arrest of two of the plaintiffs form the basis of the portion of the case against the other defendants and need not be discussed in detail here. (See Pls.' Br. at 10.)

[4] The court notes that the third plaintiff in this suit, Cherise C. LaChapelle, has no claims directly against this defendant Venator. (See Pls.' Br. at 31.)

and violation of 42 U.S.C. § 1981.[5] It is undisputed that the plaintiffs are siblings and are of African-American descent.

As will be discussed, since the court concludes that these claims are neither factually nor legally supported, the court will grant defendant's motion for summary judgment and dismiss with prejudice all of plaintiffs' claims against Venator.

## DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[5] Plaintiffs have withdrawn their claims against defendant alleging false imprisonment, assault and battery. Plaintiffs have also withdrawn their claim for negligent training as a freestanding count. (See Pls.' Letter dated Oct. 23, 2001.)

(1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**B. Negligence Claims Fail As A Matter of Law**

Plaintiffs seek to hold defendant liable on several bases of negligence: (1) a general negligence theory; (2) a theory of negligent premises liability; and (3) claims of negligent hiring, supervision and retention. After carefully reviewing these claims and the record, the court cannot conclude that defendant was negligent in its dealings with plaintiffs, in the maintenance of its premises, or in the hiring, supervision or retention of its employees. Accordingly, the court determines that all of these claims must be dismissed.

**1. General Negligence Claim Fails**

In order to sustain a claim of negligence against defendant, plaintiffs must prove that: (1) defendant owed the plaintiffs a duty of care; (2) that duty was breached; (3) plaintiffs suffered harm; and (4) plaintiffs' harm was caused by defendant's breach of its duty of care. See Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995). The existence of a legal duty is an issue of law for the court to determine. See Larson v. Larson, 373 N.W.2d 287, 289 (Minn. 1985). While Minnesota courts recognize a duty to protect when the harm is foreseeable and a special relationship exists, Minnesota courts also hold that the merchant-customer relationship does not impose upon a merchant any special duty to protect its customers. See Anders v. Trestor, 562 N.W.2d 45, 48 (Minn. Ct. App. 1997); Cairl v. State of Minnesota, 323 N.W.2d 20 (Minn. 1982).

In this case, the court cannot find that defendant owed the plaintiffs any duty of care that was breached by the events that occurred on September 5, 1998. There is no evidence that any of the alleged injuries to plaintiffs occurred as a result of defendant's actions or failure to act. The court similarly cannot determine that a special relationship existed nor that any alleged harm was foreseeable. In requesting the assistance of mall security, defendant breached no duty that it owed to plaintiffs. Moreover, defendant could not have reasonably foreseen the

subsequent occurrence of the alleged injuries when it summoned mall security. Mall security is present to maintain the peace and to ensure that the businesses in the mall are able to operate in a safe environment. The fact that the plaintiffs later became involved in an altercation with mall security in a different part of the mall is not within the range of foreseeable harm for which defendant is subject to liability.[6] Accordingly, the court must dismiss this claim.

**2. No Premises Liability Claim**

Premises liability arises when a landowner breaches a duty to "use reasonable care for the safety of all such persons invited upon the premises." Sutherland v. Barton, 570 N.W.2d 1, 7 (Minn. 1997); Norman v. Tradehome Shoe Stores Inc., 132 N.W.2d 745, 748 (Minn. 1965) ("[a] shopkeeper is under a legal obligation to keep

---

[6] Even if it could be determined that defendant owed plaintiffs a duty of care, the negligence claim would still fail as a matter of law because there is no evidence to support a conclusion that defendant took any action which could be construed as breaching the duty of reasonable care. See Block v. Target Stores Inc., 458 N.W.2d 705, 711 (Minn. Ct. App. 1990) ("[t]he law imposes a duty on a store owner to exercise reasonable care for the safety of customers."). The totality of alleged misconduct attributed to defendant's employees is: (1) a refusal to return or exchange plaintiffs' damaged shoes; (2) an accusation by defendant's employees that the damage to the shoes was intentional; (3) a call to mall security when the store manager perceived that plaintiff was becoming angry; (4) a purported refusal to show plaintiffs the store's return policy; and (5) allegations that defendant's employees "looked" at plaintiffs in an accusatory way. None of this alleged conduct is negligent nor causally related to any of the claimed recoverable injuries that purportedly later occurred.

and maintain his premises in a reasonably safe condition for use to all whom he expressly or impliedly invites to enter the premises.").

In this case, since there is no allegation that any of the plaintiffs were harmed in any way while in defendant's store and since there is no evidence or allegation that the defendant's premises were in any way unsafe, the court determines that this claim is not viable. Accordingly, it is dismissed.

**3. No Negligent Hiring, Retention or Supervision Claim**

Plaintiffs have also asserted claims against defendant for negligent hiring, retention and supervision. The court concludes that the facts of this case do not support any of these claims and they will be dismissed.

Negligent hiring occurs when an employer hires a person with dangerous propensities that could have been discovered through a reasonable investigation by the employer. Ponticas v. KMS Investments, 331 N.W.2d 907, 911 (Minn. 1983). Specifically, liability is predicated upon:

> the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

Id.

Thus, the theory of recovery under negligent hiring imposes liability for an employee's torts when the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct. See P.L v. Aubert, 545 N.W.2d 666, 668 (Minn. 1996). Furthermore, in order to sustain a claim of negligent hiring, the plaintiff must have suffered some physical injury or threat of physical injury. See Ludwig v. Northwest Airlines, Inc., 98 F. Supp.2d 1057, 1072 (D. Minn 2000) ("[plaintiff's] negligent hiring and supervision claims ... fail because she has not alleged the type of injury necessary to maintain such claims namely, bodily injury or threat of bodily injury."). Here, each of the plaintiffs has specifically testified that neither physical injury nor threat of physical injury occurred at the hands of defendant's employees. (A. LaChapelle Dep. at 37; J. LaChapelle Dep. at 52, 54-58; C. LaChapelle Dep. at 25-26, 133.).[7] Accordingly, the court concludes that plaintiffs cannot sustain a claim for negligent hiring and dismisses this claim.

Negligent retention arises when "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the

---

[7] Plaintiffs have also retracted their claims that defendant is liable for the intentional torts of false imprisonment, assault or battery. The court also notes that Minnesota has never recognized a separate tort of negligent training and has specifically held that this tort is not actionable in Minnesota. See Ludwig, 98 F. Supp.2d at 1072; M.L. v. Magnuson, 531 N.W.2d 849, 856 (Minn. Ct. App. 1995).

employer fails to take further actions such as investigating, discharge, or reassignment." M.L. v. Magnuson, 531 N.W.2d 849, 857 (Minn. Ct. App. 1995). Negligent retention imposes direct, not vicarious, liability upon an employer for an employee's actions. Oslin v. State, 543 N.W.2d 408, 415 (Minn. Ct. App. 1996). Liability is only imposed for an employee's intentional torts when the employer knew or should have known of the employee's propensities. Id. Moreover, under Minnesota law, negligent retention is construed under nearly the same legal analysis as negligent hiring. Id.; Ponticas, 331 N.W.2d at 911. Since there is no evidence to suggest that defendant was aware or should have been aware of problems with the employees working on September 5, 1998, and for the same reasons that the negligent hiring claim fails,[8] this claim is dismissed.

An employer is liable for negligent supervision when it fails to exercise ordinary care to prevent foreseeable misconduct. Negligent supervision is the "failure of the employer to exercise ordinary care in supervising the employment relationship, so as to

---

[8] That is, there is no evidence that any of defendant's employees committed any intentional tort for which defendant may be held liable. Since the tort of negligent retention imposes liability on an employer for its employee's torts, it is apparent that in order to sustain a claim of negligent retention, plaintiffs must have suffered some physical injury or threat of physical injury. See Ludwig, 98 F. Supp.2d at 1072. Again, since each of the plaintiffs testified that there was no physical contact or threat of physical contact made by any of defendant's employees, this claim is appropriately dismissed.

prevent the foreseeable misconduct of an employee from causing harm to other employees or third persons." Magnuson, 531 N.W.2d at 858 (quoting Cook v. Greyhound Lines, Inc., 847 F. Supp. 725, 732 (D. Minn. 1994)). Unlike claims of negligent hiring and retention where an employer is directly liable for the tort, the tortious act must be committed within the scope of employment in order for an employer to be held liable under this theory:

> Liability for negligent supervision of an employee is imposed under a theory of respondeat superior. The basis of liability is that the tortious act is committed in the scope of employment; whether the employer is at fault is immaterial. [Citations omitted.]

Oslin, 543 N.W.2d at 414. The concept behind this tort is based on a theory of vicarious liability, making the employer liable for any act performed by an employee. Id.

Nonetheless, plaintiffs' negligent supervision claim fails for the same reasons that their negligent retention and negligent hiring claims fail. In order to sustain a claim of negligent supervision, plaintiffs must have suffered some physical injury or threat of physical injury. See Ludwig, 98 F. Supp.2d at 1072. As discussed, no such allegation exists. Accordingly, plaintiffs fail to sustain a cause of action for negligent supervision.

**C. Claim for Intentional Infliction of Emotional Distress Fails As A Matter of Law**

A claim for intentional infliction of emotional distress arises when "one who by extreme and outrageous conduct

intentionally or recklessly causes severe emotional distress to another." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 437-40 (Minn. 1983). Minnesota courts set a high standard for determining what constitutes extreme and outrageous conduct. The conduct complained of must be "so atrocious that it passes the bounds of decency and is utterly intolerable in a civilized community." Id. at 439 (quoting Haagenson v. Natl' Farmer Union Prop. & Cas., Co., 227 N.W.2d 648, 652 n. 3 (Minn. 1979)). Additionally, the conduct must be "so severe that no reasonable person could be expected to endure it." Id. In general, this tort is disfavored in Minnesota and courts limit it to cases involving particularly egregious facts. Id.

Based on the allegations in this case, and the high burden faced by plaintiffs in establishing a claim for intentional infliction of emotional distress, the court concludes that plaintiffs fail to sustain such a claim. The conduct that plaintiffs allege does not rise to the level of "extreme and outrageous" or "utterly intolerable in a civilized community" that is required to sustain a claim of intentional infliction of emotional distress. See Ludwig, 98 F. Supp. 2d at 1072. Store employees that refuse to exchange merchandise that they consider to be worn or damaged and then seek assistance from mall security when

they perceive that the customer is becoming angry does not rise to the level of outrageousness necessary to support a claim under this tort. Accordingly, the court dismisses it.

**D. The Cause of Action Under 42 U.S.C. § 1983 Fails as a Matter of Law**

Plaintiffs bring a claim under 42 U.S.C. § 1983 alleging that defendant enforced racially discriminatory policies against them. The court, however, concludes that this is not a viable claim.

42 U.S.C. § 1983 is limited in scope to protect individuals from discriminatory actions taken under the "color of state law." Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970) (discussing that only state actors are usually held liable under § 1983). Defendant, a private actor, may only be held liable if it "is a willing participant in joint action with the State or its agents." Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997). Under § 1983, "plaintiffs must establish, at the very least, an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the plaintiffs' rights under the Constitution or laws of the United States." Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999). Courts have repeatedly held that a private party does not jointly act with a state actor simply by contacting law enforcement or seeking police assistance. See, e.g., Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989); Carey v. Continental Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir. 1987); Adickes, 398 U.S. at 150 (holding that

a private actor's mere invocation of state legal procedures does not constitute state action under the statute); Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 939 n. 21 (1982).

Here, plaintiffs' § 1983 claim cannot be maintained. Defendant is a purely private actor that sought the assistance of mall security. There is no evidence whatsoever that defendant willingly participated in a joint action with mall security or the local police to violate plaintiffs civil rights. Put differently, there is no evidence that there was a "meeting of the minds" between defendant and security or local law enforcement to use race as a guiding factor in dealing with defendant's customers. Accordingly, the court must dismiss plaintiffs' 1983 claims.

**E. Cause of Action Under 42 U.S.C. § 1981 Fails as a Matter of Law**

Plaintiffs have also asserted that defendant violated 42 U.S.C. § 1981 by denying them the right to contract for goods and services. After carefully reviewing the record, the court concludes that since there is no evidence that plaintiffs were denied the right to purchase anything or were treated in a manner differently than any white customers at Champs, this claim must be dismissed.

Section 1981 provides that all persons are entitled to "the same right in every state and territory to make and enforce contracts ... and to the full and equal benefit of all laws and for

the security of property as is enjoyed by white citizens ... ."[9] 42 U.S.C. § 1981 (2001). Section 1981 claims "involving retail transactions have been infrequent." Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996); Rogers v. Elliott, 135 F. Supp. 2d 1312, 11315 (N.D. Ga. 2001) ("[v]irtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase."). In order to sustain a claim under § 1981, plaintiff must "demonstrate that he or she was actually prevented from making a purchase or that he or she would have attempted to make a purchase if the defendant had not interfered." See Wesley v. Don Stein Buick, Inc., 42 F. Supp. 2d 1192, 1201 (D. Kan. 1999). Moreover, "once the purchase is completed, no contractual relationship remains." Youngblood v. Hy-Vee Stores, Inc., 266 F.3d 851, 854 (8th Cir. 2001) (citations omitted).

Here, there is no evidence that any of the plaintiffs were prevented from contracting for or making a purchase. To the contrary, defendant sold plaintiff the shoes at issue approximately eight or nine days before the events that prompted this lawsuit. Upon completion of the sale, the contract between plaintiff and defendant for the purchase of shoes was complete. See Youngblood,

---

[9] The statute goes on to define the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981, subd. b.

266 F.3d at 854 (holding that "nothing that happened after the sale created any further contractual duty on [defendant's] part. Accordingly, [defendant] cannot be said to have deprived [plaintiff] of the benefit of any contractual relationship."); Wesley, 42 F. Supp. 2d at 1201 (providing that plaintiffs "asserting a § 1981 claim in the context of a retail transaction must demonstrate ... that they were actually prevented from making a purchase."). Both plaintiffs have testified that they did not attempt to purchase any other merchandise from defendant on September 5, 1998.[10]

The entire basis for plaintiffs' claim under § 1981 is that Ahmad LaChapelle was not allowed to return the shoes that he had previously purchased. The record reflects that the shoes that he was attempting to return had been worn and were damaged. (A. LaChapelle Dep. at 30 and 33.) The two Champs employees who viewed the tennis shoes believed the damage was intentional. (Rubenzer Aff. ¶ 3; Bloomer Dep. at 16, 17 and 25.) Accordingly, plaintiffs' request to return the shoes was denied. The court is unaware of

---

[10] Additionally, plaintiff Jamal LaChapelle has not specifically alleged that he was denied the right to purchase anything by a Champs employee. He merely testified that he was not directly offered service while looking at some T-shirts in the store while accompanying his brother who was attempting to return the damaged shoes. This alone is insufficient to state a claim under § 1981. See Sterling v. Kazmierczak, 983 F. Supp. 1186, 1192 (N.D. Ill. 1997) (plaintiffs simply browsing in store provides an insufficient factual basis to state claim under 42 U.S.C. § 1981).

any legal right under a retail contract to return or exchange used or intentionally damaged goods.[11] Plaintiffs' § 1981 claims fail as a matter of law.

Moreover, the court concludes that there is no evidence that defendant's refusal to accept the return of shoes was in any way motivated by race. Plaintiffs present no evidence to support their assertion that because Ahmad LaChapelle is African American, defendant refused to accept for return shoes that defendant's employees believed to have been intentionally damaged. See Jackson v. Tyler's Dad Place, Inc., 850 F. Supp. 53, 55-56 (D. D.C. 1994) (dismissing similar claim when plaintiffs failed to present any evidence to support allegation that they were denied seating in a restaurant because of their race). Put differently, there is no evidence to suggest that a white person would have been treated any differently under similar circumstances. See Occhino v. Lannon, 150 F.R.D. 613, 620 n.7 (D. Minn. 1993) (citing Patterson v. McLean Credit Union, 492 U.S. 164, 181 (1989)(providing that under a § 1981 claim, defendant can be held liable only if it violated plaintiffs' "right to make and enforce contracts without respect to

---

[11] Plaintiff also submitted, at a late date, a copy of the defendant's internal store policy concerning "refunds and exchanges." (See Pls.' Supp. List of Exs., Ex. K.) After carefully reviewing this document, the court is unconvinced that this vaguely worded "policy" provides any insight or assistance in the present matter since it is silent on situations where merchandise that is considered to have been intentionally damaged is brought back for return.

race."); Griffin v. Pinkerton, Inc., 173 F.3d 661, 664-665 (8th Cir. 1999) (affirming summary judgment for defendant where plaintiff fails to show "that he suffered offensive conduct that similarly situated white counterparts did not.").[12] In the absence of such evidence, plaintiffs' 42 U.S.C. § 1981 claim fails.[13]

**CONCLUSION**

Since there is no genuine issue as to any material fact and plaintiffs' claims fail as a matter of law, **IT IS HEREBY ORDERED**

---

[12] The court also concludes that plaintiffs' reliance on Perry v. Burger King, Inc., is misplaced because in that case, the employees of a restaurant made racially offensive comments to the plaintiff and provided white customers with the same service that was being denied to plaintiff, an African American. 924 F. Supp. 545 (S.D.N.Y. 1996). Here, to the contrary, the record is devoid of any evidence that defendant's employees treated white customers differently than African American customers or that any remarks or statement were made concerning plaintiffs' race. C.f. McCaleb v. Pizza Hut, Inc., 28 F. Supp. 2d 1043, 1048 (N.D. Ill. 1998) (denying summary judgment on § 1981 claim when record reflected that white customers were served before African American plaintiff and derogatory remarks were made regarding plaintiff's race).

[13] While plaintiffs apparently do not invoke the equal benefits clause of § 1981, the court notes that an equal benefits claim requires a showing of state action by defendant. See Mahone v. Waddle, 564 F.2d 1018, 1029 (3d Cir. 1977) ("[W]hile private discrimination may be implicated by the contract clause of section 1981, the concept of state action is implicit in the equal benefit clause."). See also Premachandra v. Mitts, 753 F.2d 635, 640 n. 5 (8th Cir. 1985) (citing with approval the holding in Mahone that equal benefit clause requires state action). As stated, plaintiffs here have failed to establish a state action by defendant.

that defendant Venator's motion for summary judgment [Docket No. 28] is granted and that plaintiffs' claims against defendant Venator are dismissed with prejudice.

Date: January 7, 2002

David S. Doty, Judge
United States District Court

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500